## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:21-cv-22787-COOKE/DAMIAN

REFRIGERATION & ELECTRICAL
SYSTEMS, INC.,

      Plaintiff,

v.

MAXUM INDEMNITY COMPANY,

      Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

      THIS MATTER is before the Court on the parties' cross motions for summary judgment. *See* ECF Nos. 36 (Defendant's motion for summary judgment) and 43 (Plaintiff's motion for summary judgment). The parties have opposed each other's motions, ECF Nos. 60 (Defendant's response) and 61 (Plaintiff's response), and the motions are otherwise ripe for adjudication. For the reasons stated below, the Court **DENIES** Defendant's motion for summary judgment and **GRANTS IN PART** Plaintiff's motion for summary judgment.

## FACTUAL BACKGROUND

      This case concerns an insurance dispute between Plaintiff Refrigeration & Electrical Systems, Inc. ("Plaintiff" or "RES") and Defendant Maxum Indemnity Company ("Defendant" or "Maxum"). RES is a Florida company that builds and installs refrigeration systems. Maxum is a Delaware-based insurance company that issues commercial general liability ("CGL") insurance policies. RES obtained an insurance policy from Maxum for coverage related to the construction of a refrigeration system. RES was subsequently sued over that construction project and sought to have Maxum defend it in that lawsuit. After Maxum refused to do so, RES brought the instant suit.

### I.  The Insurance Policy at Issue

      RES and Maxum entered into a commercial general liability policy for the period

between February 11, 2016, and February 11, 2017. *See* ECF No. 1-3 (copy of policy). The policy states that Maxum:

> [W]ill pay those sums that [RES] becomes legally obligated to pay as damages because of [. . .] "property damage" to which this insurance applies. [Maxum] will have the right and duty to defend [RES] against any "suit" seeking those damages. However, [Maxum] will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply.

*Id.* at 22.[1] The policy states that it only covers property damage which "occurs during the policy period." *Id.*

The policy defines property damage as "[p]hysical injury to tangible property, [which] shall be deemed to occur at the time of the physical injury that caused it[.]" *Id.* at 36. Property damage also includes the "[l]oss of use of tangible property that is not physically injured, [which] shall be deemed to occur at the time of the 'occurrence' that caused it." *Id.*

The policy also contains several relevant exclusions. *See* ECF No. 1-3 at 23. First, is the so-called "your work" exclusion, which applies to work performed by RES. *Id.* at 26. This exclusion states that the policy does not apply to "'[p]roperty damage' to 'your work' arising out of it or any part of it[.]" *Id.* at 26. The "your work" exclusion "does not apply if the damaged work or the work out of which the damage arises was performed on [the insured's] behalf by a subcontractor." *Id.*

Second, the policy excludes certain work performed by independent contractors on RES's behalf. ECF No. 1-3 at 64. The policy states the insurer "shall have no obligation to indemnify or defend any insured for . . . 'property damage' . . . arising out of:

> A.  The premises of any independent contractor; or
>
> B.  The operations of any independent contractor for or on behalf of any insured.
>
> C.  "Your work" performed by independent contractors and included in the "products-completed operations hazard".

*Id.*

Finally, the policy excludes claims for "'property damage' . . . directly or indirectly

---

[1] The Court references the pagination generated by the CM/ECF system.

arising out of, caused by, or resulting from breach of contract." *Id.* at 75.

## II. The Underlying Lawsuit against RES

FS3 Building 7 LLC ("FS3") is a landlord and owner of a commercial warehouse in Miami, Florida. ECF No. 58-1 at 2–3 (operative complaint in the underlying action).[2] In February 2016, FS3 leased warehouse space to Schratter Foods Incorporated ("Schratter"). *Id.* Schratter intended to use this space "as a refrigerated warehouse and distribution center for its South Florida operations importing and wholesale distribution of cheese and related food products." *Id.* at 3. As part of the lease agreement between FS3 and Schratter, FS3 agreed to build a large refrigeration unit, which would occupy about two-thirds of the warehouse space leased to Schratter. *Id.* at 3. FS3 contracted with RES to build the refrigeration unit in March 2016. *Id.* at 5 (RES is referred to as "Contractor" in the underlying complaint). It is undisputed that RES performed construction services from approximately April 2016 to September 2016. *See* ECF No. 62 ¶ 29 (Plaintiff's response statement of material facts); ECF No. 41 ¶ 29 (Defendant's statement of material facts).

In February 2018 Atalanta Corporation ("Atalanta") purchased Schratter's business assets "assuming all of Schratter's rights and obligations as the leasehold tenant of the [FS3 refrigerated warehouse] Unit." ECF No. 58-1 at 6; *see also* ECF No. 71-4 at 2 (purchase and assignment agreement dated February 2018).[3] As part of Atalanta's purchase of Schratter,

---

[2] The Court instructed the parties to refile the complaints in the underlying action. *See* ECF No. 52. The parties filed the second amended complaint—now the operative complaint in that action—as ECF No. 58-1. Accordingly, the Court cites to that complaint, which the parties agree is the operative complaint in the underlying action. *See Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.*, 657 F.3d 1135, 1142 (11th Cir. 2011) ("[c]overage [concerning the duty to defend] is determined from examining the most recent amended pleading, not the original pleading").

[3] RES states there is some ambiguity as to the purchase date, ECF No. 41 ¶ 24 n.2, and cites a notice of claim letter from Atalanta to RES referenced in the complaint, stating the purchase occurred in 2017, *see* ECF No. 71-6 at 2 (copy of letter). Both the operative complaint, ECF No. 58-1 at 6, and the purchase and assignment agreement included as an exhibit to the complaint, ECF No. 71-4 at 2, state Atalanta purchased Schratter in February 2018. Maxum states this discrepancy is a typographical error in an ancillary document, which the Court should disregard. *See* ECF No. 59 ¶ 24 n.1. The Court finds this discrepancy is not material to its analysis, although it does appear to be nothing more than a typographical error.

Atalanta was assigned Schratter's rights and obligations under the lease agreement between Schratter and FS3, as well as "any and all rights and claims that Schratter may have had with respect to the design and construction of the improvements to the [warehouse] Unit." *Id.* Subsequently, FS3 also assigned Atalanta all of its claims against RES for the construction of the refrigeration system. *Id.* at 9.

At some unspecified time, Atalanta states it discovered defects in both the design and construction of the refrigeration system, as well as damage to other elements of the RS and the Unit, and damage to inventory and personal property resulting from this allegedly faulty construction. ECF No. 58-1 at 6–8, 17–20. In September 2020, Atalanta sued RES along with the architects and engineers who worked on designing and building the refrigeration system. ECF No. 56-1 at 1 (original state court complaint). The current and operative complaint in the state court lawsuit ("the Atalanta suit" or "the underlying suit") raises four claims against RES for violations of the minimum building code, negligence, professional negligence, and breach of contract. ECF No. 58-1 at 15–21. The complaint also incorporates several relevant exhibits: (1) the written agreement entered into between FS3 and RES (Exhibit C to the complaint); (2) the agreement assigning all of Schratter's rights and claims against RES to Atalanta (Exhibit D to the complaint); (3) a series of third-party reports documenting failures of the refrigeration system (Exhibit E to the complaint); (4) a notice letter from Atalanta to RES, notifying RES of defects with the refrigeration system (Exhibit F to the complaint); (5) the agreement assigning all of FS3's rights and claims against RES to Atalanta (Exhibit H to the complaint).[4]

After Maxum refused to defend or indemnify RES in connection with the Atalanta suit, RES filed the instant case seeking declaratory relief.

### III. The Use of Subcontractors

In addition to the facts in the underlying state court complaint, Maxum has asked the Court to consider an email exchange between a Maxum representative and RES's counsel.

---

[4] Due to the parties' deficient filing, the Court instructed the parties to refile the exhibits to the operative complaint, *see* ECF No. 70, which the parties did as ECF Nos. 71-1–71-8. The parties have certified these exhibits are part of the operative complaint before the state court. ECF No. 72.

*See* ECF No. 37 ¶¶ 31–32 (Defendant's statement of material facts). In this email exchange RES's counsel states that RES hired two "subcontractors" to perform work associated with the construction of the refrigeration system. *See* ECF No. 40-9 at 5 (copy of emails). RES objects to the use of this evidence. ECF No. 62 ¶¶ 31–32.

## PROCEDURAL HISTORY

RES filed this action for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. RES raises a single claim seeking declaratory judgment from this court. ECF No. 1 ¶¶ 52–61. RES alleges that the Atalanta lawsuit triggers Maxum's duty to defend and possibly indemnify RES under the insurance policy. Maxum moved to dismiss this case, arguing several policy exclusions bar coverage. ECF No. 13. After reviewing the parties' submissions, the Court converted the motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 12(d) and provided the parties reasonable opportunity to present all material pertinent to the motion. ECF No. 52.

The parties filed cross motions for summary judgment. Defendant argues Plaintiff is not entitled to declaratory judgment for four reasons. First, Defendant argues that the Atalanta suit fails to allege property damage that occurred within the policy period. ECF No. 36 at 7. Second, Defendant argues that the "your work" exception bars coverage. *Id.* at 9. Third, Defendant argues the breach of contract exclusion bars coverage. *Id.* at 11. Fourth, Defendant argues that because the work in question was performed by independent contractors, Plaintiff cannot recover here. *Id.* at 15. Accordingly, Defendant argues the Court should enter declaratory judgment in its favor and find that Maxum has no duty to defend RES. *Id.* at 17.

Plaintiff opposes Defendant's motion, ECF No. 61, and has filed its own motion for summary judgment, seeking that the Court enter declaratory relief in its favor, ECF No. 43. Plaintiff argues the Atalanta suit fairly and potentially alleges grounds for coverage, including property damage occurring within the policy period. *Id.* at 7. Moreover, according to Plaintiff, Defendant has not met its burden to show that any of the policy exclusions apply, including the "your work" exclusion, *id.* at 18, the breach of contract exclusion, *id.* at 16, or the independent contractor exclusion, *id.* at 14.

Each party also filed a response to the other party's motion for summary judgment, a statement of material facts, a response to the other party's statement of material facts, a reply in support of its motion, supporting documents, and supplemental briefing. DE 36-43, 65-67, 76-80. Accordingly, these motions are ripe for adjudication.

## LEGAL STANDARD

### I. Summary Judgment

"Summary judgment is appropriate if there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law." *Scott v. United States*, 825 F.3d 1275, 1278 (11th Cir. 2016) (citing Fed. R. Civ. P. 56(a)). The Court must "consider all evidence in the record when reviewing a motion for summary judgment—pleadings, depositions, interrogatories, affidavits, etc.—and can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

### II. Declaratory Judgment

A court may issue a declaratory judgment only where there is an "actual controversy" between the parties. 28 U.S.C. § 2201. "[U]nder the facts alleged, there must be

a substantial continuing controversy between parties having adverse legal interests." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019) (quotation omitted). The controversy must be "real and immediate" as opposed to "conjectural, hypothetical, or contingent." *Id.* Similarly, the plaintiff "must allege facts from which it appears that there is a 'substantial likelihood that [they] will suffer injury in the future.'" *Id.* at 1211 (quoting *Malowney v. Federal Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)).

### III. The Duty to Defend Under Florida Law

In deciding a duty to defend claim like the one brought here, the Court applies Florida law.[5] *See Travelers Indem. Co. of Conn. v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1260–61 (11th Cir. 2021). Under Florida law, "[i]t is well settled that an insurer's duty to defend its insured against a legal action arises when the [underlying] complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442–43 (Fla. 2005). This duty "must be determined from the allegations in the complaint . . . and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless." *Id.* at 443. Even where "actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend." *Id.* (citation omitted). Pursuant to Florida law, exhibits attached to a complaint are part of that pleading, and courts review them accordingly. *See Santiago v. Mauna Loa Invs., LLC*, 189 So. 3d 752, 756 (Fla. 2016).

In limited exceptions, the Court may consider certain extrinsic facts "where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the underlying complaint." *Higgins v. State Farm Fire & Cas. Co.*, 894

---

[5] The Florida Supreme Court has stated that where it has not decided an issue, trial courts must follow the decisions of Florida's District Courts of Appeal. *See Pardo v. State*, 596 So. 2d 665, 667 (Fla. 1992); *see also United States v. Montague*, 437 F. App'x 833, 836 (11th Cir. 2011) (citing to the rule in *Pardo*). Where Florida's appellate courts are split on an issue, trial courts must follow the law of the appellate district "in which the trial court is located." *Pardo*, 596 So. 2d at 667. The Court notes that both the Miami Division of the Southern District of Florida where this case is pending and the underlying state action are located in Florida's Third District. Accordingly, where the Florida Supreme Court is silent on an issue, the Court follows the law of Florida's Third District Court of Appeal.

So. 2d 5, 10 n.2 (Fla. 2004). "[S]uch cases are best viewed 'as exceptional cases in which courts have crafted an equitable remedy when it is manifestly obvious to all involved that the actual facts placed the claim outside the scope of coverage[.]'" *Advanced Sys., Inc. v. Gotham Ins. Co.*, 272 So. 3d 523, 527 (Fla. 3d DCA 2019) (quoting *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323–24 (11th Cir. 2014)).

Where an insurer seeks to bar coverage based on an exclusion to the duty to defend, "it has the burden of demonstrating that the allegations of the [underlying] complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Gotham*, 272 So. 3d at 527 (quotation and citation omitted); *see also Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1296 (11th Cir. 2006) (interpreting Florida law, and further noting that exclusionary clauses are generally disfavored).

"Even where the complaint alleges facts partially within and partially outside the coverage of a policy, the insurer is nonetheless obligated to defend the entire suit, even if the facts later demonstrate that no coverage actually exists." *Gotham*, 272 So. 3d at 527. *See also Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 163 n.4 (Fla. 2003) (Anstead, C.J., concurring in part) ("[i]f the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit") (alteration in the original; quotation omitted); *Mckenzie & Sons*, 10 F.4th 1255, 1261 ("where a complaint alleges facts that are partially within and partially outside the coverage of an insured's policy, the insurer is not only obligated to defend, but must defend that entire suit") (quoting *Sunshine Birds & Supplies, Inc. v. U.S. Fid. & Guar. Co.*, 696 So. 2d 907, 910 (Fla. 3d DCA 1997)). "Any doubts regarding the duty to defend must be resolved in favor of the insured." *Jones*, 908 So. 2d at 442.

**DISCUSSION**

The Court first considers whether the underlying complaint fairly and potentially alleges property damage which occurred within the policy period. After finding that the underlying complaint has alleged such covered damage, the Court considers whether Maxum has met its burden to show that the allegations in the complaint are cast solely and entirely within one of three policy exclusions it identifies, and subject to no other reasonable interpretation. For the reasons stated below, the Court finds Maxum has not met that burden, and so it has a duty to defend RES in the underlying action.

**I.   The underlying complaint fairly and potentially alleges covered damages.**

The Court begins by analyzing whether the underlying complaint fairly and potentially alleges damages which occurred within the policy period. Finding that it does, the Court determines whether the complaint fairly and potentially alleges "property damage" as defined in the policy.

**a.   The underlying complaint fairly and potentially alleges damages which occurred during the policy period.**

The Court begins by determining whether the underlying complaint fairly and potentially alleges damages which occurred during the policy period. As noted above, the Maxum policy covers only property damage that "occurs during the policy period." ECF No. 1-3 at 22. The policy further states that "[p]roperty damage" is "deemed to occur at the time of the physical injury that caused it[.]" ECF No. 1-3 at 36; *see also Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1247 (11th Cir. 2015) (noting that pursuant to the plain language of similar policies, "[p]roperty damage occurs when the damage happens, not when the damage is discovered or discoverable").

The underlying complaint, however, is silent as to when physical injury caused property damage here. RES acknowledges as much. ECF No. 43 at 11. The complaint contains a single line as to when certain construction defects were observed (not when property damages occurred), which states that "[a]fter construction of the [refrigeration system], but within the time limitations provided by Section 95.11(3)(c), Florida Statutes, Plaintiff [Atalanta] discovered latent defects in both the design and construction of the [refrigeration system]." ECF No. 58-1 at 6. Exhibits attached to the complaint dated July

and August 2019 document these alleged defects and related property damage, for which Atalanta now seeks to recover. *Id.* at 6–8.

Where an underlying complaint is "silent as to the timing of damages," the Court must assess whether the complaint "can be reasonably construed to allege property damage that occurred during the policy period." *S.-Owners Ins. Co. v. MAC Contractors of Fla., LLC*, 768 F. App'x 970, 973 (11th Cir. 2019) (citing *Trizec Properties, Inc. v. Biltmore Const. Co.*, 767 F.2d 810, 813 (11th Cir. 1985) (finding a duty to defend even where the underlying complaint did not specify when damages occurred)). Stated differently, if "the language of the complaint at least marginally and by reasonable implication . . . could be construed to allege" damage that occurred during the policy period, then the damage may be reasonably construed to have occurred during that period. *Trizec*, 767 F.2d at 813 (quotation and citation omitted) (also finding a duty to defend despite the silence in the underlying complaint).[6]

Applying the standard in *MAC* and *Trizec*, Florida district courts have repeatedly found that where underlying complaints are silent on the timing of damages, such complaints can be reasonably construed to allege property damage that occurred during the policy period. *See, e.g.*, *BITCO Nat'l Ins. Co. v. Old Dominion Ins. Co.*, 379 F. Supp. 3d 1230, 1241 (N.D. Fla. 2019) (where complaint was silent it was reasonable for the court to conclude damage "occurred between the commencement of construction in 2009 and the engineering expert's inspection of the Project in 2013"); *S.-Owners Ins. Co. v. Wentworth Constr. Co.*, LLC, No. 15-80789-CIV, 2019 WL 8275154, at *10 (S.D. Fla. Dec. 10, 2019) (where complaint was silent court found complaint alleged facts that at least partially fell within policy period); *Auto-Owners Ins. Co. v. Env't House Wrap, Inc.*, No. 3:17-CV-817-J-34PDB, 2019 WL 3069080, at *8 (M.D. Fla. July 12, 2019) (where complaint was silent "the damage could have occurred any time after commencement of construction and before the

---

[6] The Court notes that the Florida Supreme Court and the Third District Court of Appeal have not spoken directly on the issue of how to evaluate such silences as to the timing of damages. Although *Trizec* is almost four decades old, the Court has found only one Florida appellate case referencing it, albeit for a different proposition. *See Pennsylvania Lumbermens Mut. Ins. Co. v. Indiana Lumbermens Mut. Ins. Co.*, 43 So. 3d 182, 189 (Fla. 4th DCA 2010). Because the Court finds no indication that Florida courts would decide this issue differently, the Court follows Eleventh Circuit precedent here.

inspection"); *Nat'l Builders Ins. Co. v. RQ Bldg. Prod., Inc.*, No. 17-61474-CIV, 2018 WL 4846410, at *3–4 (S.D. Fla. Oct. 5, 2018) (where complaint was silent, damage could have occurred during the policy period) (collecting cases); *Travelers Prop. Cas. Co. of Am. v. Amerisure Ins. Co.*, 161 F. Supp. 3d 1133, 1138 (N.D. Fla. 2015), *aff'd*, 674 F. App'x 957 (11th Cir. 2017) (where complaint was silent "the damage may have occurred during the policy period, either after completion of the work . . . or perhaps even while the work was ongoing"). District courts have repeatedly found such readings consistent with the Florida law requirement that the duty to defend be determined from the allegations in the complaint, and that doubts as to the duty to defend be resolved in favor of the insured.

Here the Court similarly finds that "the language of the complaint at least marginally and by reasonable implication . . . could be construed to allege" damage occurring within the policy period. *See Trizec*, 767 F.2d at 813. The complaint states that construction on the refrigeration system took place in 2016. ECF No. 58-1 at 5–6. Although the complaint does not state a specific date for when property damage occurred, it states that by July 2019, inspectors had documented defects in the refrigeration system resulting in property damage. *Id.* at 6–8. Like the findings of other district courts reviewing similar complaints, the Court finds it reasonable to conclude that these allegations can be read to include at least some property damage occurring during the policy period.

Maxum's argument to the contrary is unpersuasive. Maxum mainly argues that because Atalanta did not purchase Schratter's assets until 2018, Atalanta could not have suffered any damage to property or inventory in the warehouse until after the policy expired in February 2017.[7] ECF No. 60 at 8–9. But as RES points out, ECF No. 61 at 5, Maxum's argument ignores the complaint's allegations that Schratter and FS3 assigned all their rights and claims against RES to Atalanta, *see* ECF No. 58-1 at 6 (stating Atalanta "stands in the shoes of Schratter and has standing to pursue any and all rights and claims" Schratter may have brought against RES); *id.* at 9 (stating Atalanta "also stands in the shoes of [FS3] and

---

[7] Maxum concedes that certain damages to the refrigeration system or the warehouse unit "could have occurred at any time after RES commenced work." ECF No. 60 at 9. As explained in the following section, however, Maxum argues these damages are not property damage within the meaning of the policy, and that they are excluded from policy coverage under the "your work" exception.

has standing to pursue and all rights and claims" FS3 may have brought against RES); *see also* ECF No. 71-4 at 2 (assignment agreement between Atalanta and Schratter); ECF No. 71-8 at 9 (assignment agreement between Atalanta and FS3); *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1227 (S.D. Fla. 2009) ("An assignment is a transfer of all the interests and rights to the thing assigned. Following an assignment, the assignee 'stands in the shoes of the assignor' and the 'assignor retains no rights to enforce the contract' at all.") (quoting *Leesburg Cmty. Cancer Ctr. V. Leesburg Reg'l Med. Ctr., Inc.*, 972 So. 2d 203, 206 (Fla. 5th DCA 2007)). In other words, pursuant to the assignments described in the underlying complaint, Atalanta could bring claims for property damage that Schratter or FS3 incurred during the policy period. And, as described below, it appears Atalanta has done so here. Because these assignments allow Atalanta to sue for damages Schratter and FS3 incurred during the policy period, the Court finds Maxum's argument foreclosed. Accordingly, the Court finds the Atalanta complaint fairly and potentially alleges damages which occurred during the policy period.

> **b. The underlying complaint alleges "property damage" within the meaning of the Maxum policy.**

The parties also dispute whether the underlying complaint alleges property damage within the meaning of the Maxum policy. The policy defines property damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property." ECF No. 1-3 at 15. The parties identify three types of damage alleged in the underlying complaint: (1) damage to other property in the warehouse, including inventory and personal property; (2) damage to the warehouse unit where the refrigeration system was built; (3) damage to non-defective components of the refrigeration system build by RES. The Court considers each in turn.

> **i. Damage to property other than the warehouse unit and the refrigeration system**

The underlying complaint states that due to RES's construction failures, Plaintiff Atalanta (or its assignors) suffered property damage which includes:

a. damaged and spoiled products, inventory and personal property;

b. costs incurred to replace damaged products, inventory and personal property being stored within the [warehouse] Unit that was damaged as a result of excess condensation and water intrusion resulting from the

deficiencies in the RS;

ECF No. 58-1 at 17; *see also id.* at 19 (making similar allegations). Additionally, a notice of claim letter from Atalanta to RES, attached as an exhibit to the operative complaint, states that: "The deficiencies in RES's work have led to a near total failure of the refrigeration system. As a result of increased moisture and condensation, water intrusion, premature corrosion and deteriorating system components, Atalanta has incurred significant property damage to its inventory [and] equipment[.]" ECF No. 71-6 at 2.

Maxum does not dispute that such damage would be "property damage" within the meaning of the policy. *See* ECF No. 60 at 8–9. Instead, it relies on the policy-period argument explained above to argue such damages should not be covered here. *Id.*; *see supra*, Discussion, Part I.a. However, as the Court has explained, because Atalanta was assigned all of Schratter's and FS3's claims against RES, that argument fails. Accordingly, the Court finds the underlying complaint fairly and potentially alleges property damage within the meaning of the policy.

### ii. Damage to the warehouse unit

Next, the Court reviews allegations concerning damage to parts of the warehouse unit other than the refrigeration system. The underlying complaint states that Atalanta and its agents discovered a number of defects in the design and build of the refrigeration system which resulted in "condensation and water damage to . . . the [warehouse] Unit." ECF No. 58-1 at 7. In addition, the complaint incorporates four reports carried out by third parties, which support these allegations. *See* ECF No. 71-5 at 6 (identifying a "water catch pan" over the "main office" of the warehouse which "overflows creating puddles between office and cooler hallways"). Similarly, the aforementioned notice of claim letter states that "Atalanta has incurred significant property damage . . .  to areas of its leased space other than the refrigeration system." ECF No. 71-6 at 2.

Maxum does not dispute that damage to the warehouse unit may be property damage within the meaning of the policy, but argues that these allegations are simply "'buzz words', unsupported by factual allegations, [and] insufficient to trigger coverage as a matter of law." ECF No. 60 at 6. The Court disagrees. First, as noted above, the underlying complaint and the incorporated exhibits make specific mention of damages to parts of the warehouse unit other than the refrigeration system. The Court finds these references are

akin to allegations of damage "to other property," which the Eleventh Circuit has stated are sufficient to create a duty to defend. *See J.B.D. Const., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x 918, 926 (11th Cir. 2014) (noting that references to "damages to the interior of the property, other building components and materials" were sufficient to create a duty to defend).

To the extent Maxum relies on *Auto-Owners Ins. Co. v. Elite Homes, Inc.*, 676 F. App'x 951 (11th Cir. 2017), the Court finds that argument unpersuasive. *See* ECF No. 60 at 7. In *Elite Homes*, two homeowners brought suit against a contractor who built them "a single-family residence." 676 F. App'x at 952. When the contractor tried to argue that the homeowners' underlying suit alleged damage to "other property," the district court and Eleventh Circuit found such arguments unavailing. Key to this analysis was the finding that "the amended complaint is too vague . . . to assume that the [homeowners] alleged anything other than damages to the home, and therefore [the contractor's] own work." *Id.* at 955. In other words, because the contractor had built the entire home, and because the complaint did not specifically allege damage to anything other than the home, the district court and the Eleventh Circuit found allegations of "other property" damage, without more, were too vague. The instant case is distinguishable in at least two ways. First, there is no allegation that RES here built the warehouse unit and the refrigeration system. Second, as explained above, the allegations here above go beyond general references to damage to "other property." Maxum's argument that *Elite Homes* dictates a different outcome here therefore fails.[8]

Accordingly, the Court also finds that the underlying complaint alleges facts concerning damage to the warehouse unit which fairly and potentially fall within the definition of "property damage" in the Maxum policy.

### iii. Damage to non-defective parts of the refrigeration system

Finally, the complaint alleges RES's work resulted in damage to non-defective components of the refrigeration system. *See* ECF No. 58-1 at 7 (identifying various forms of

---

[8] Similarly, to the extent Maxum relies on cases concerning advertising injury clauses, the Court finds the analysis in those cases unpersuasive, because no advertising injury is at issue here. *See* ECF No. 60 at 6 (citing *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226 (11th Cir. 2004) and similar cases). The Court finds the underlying complaint alleges damage to parts of the warehouse with sufficient specificity.

"water damage to other components of the [refrigeration system]"). On its face, this appears to be property damage within the meaning of the policy. *See* ECF No. 1-3 at 15 (defining property damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property"). However, as the parties' briefing points out, whether damage caused by defective work to non-defective project components is "property damage" within the meaning of a commercial general liability policy is a more complicated question under Florida law.

The general rule under Florida law is that there is no "property damage" where "there is no damage beyond the faulty workmanship or defective work[.]" *See Amerisure Mut. Ins. Co. v. Auchter Co.*, 673 F.3d 1294, 1304 (11th Cir. 2012) (quoting *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 889 (Fla. 2007)). In other words, there must be damage to "some other nondefective project component." *Auchter*, 673 F.3d at 1304. Whether something is considered a non-defective project component, however, depends in part on whether one or more subcontractors carried out work on behalf of a contractor. For instance, where the work of one subcontractor damages the work of a second subcontractor, that damage may be damage to a non-defective project component, and therefore "property damage" within the meaning of commercial general liability policy. *See Carithers*, 782 F.3d at 1250 (interpreting *J.S.U.B.* and *Auto-Owners Ins. Co. v. Pozzi Window Co.*, 984 So. 2d 1241 (Fla. 2008)). However, where all the work is performed by a single subcontractor, and that single subcontractor damages its own work, then "this defective work caused no damage apart from the defective work itself." *Carithers*, 782 F.3d at 1250. Accordingly, the damage is not considered "property damage" to a non-defective project component.

In at least one unpublished opinion, the Eleventh Circuit has applied the aforementioned precedent to determine whether an underlying complaint asserts "property damage" within the meaning of a commercial general liability policy, sufficient to trigger a duty to defend. *See S.-Owners Ins. Co. v. MAC Contractors of Fla., LLC*, 819 F. App'x 877 (11th Cir. 2020) (hereinafter *MAC II*). In *MAC II*,

> [t]he operative amended complaint alleged that [the insured, a contractor] used subcontractors for work on the residence and that the residence was 'replete with construction defects' and various damage. It did not further allege which subcontractors performed which work or how the damage occurred.

15

*Id.* at 882. Given these ambiguities, the Eleventh Circuit found "the complaint's allegations are broad enough to allow [the contractor] to prove that one subcontractor negligently damaged nondefective work performed by another subcontractor." *Id.* The court further drew a distinction between "a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage,' and a claim for the costs of repairing damage caused by the defective work, which is a claim for 'property damage.'" *Id.* at 879 (quoting *J.S.U.B.*, 979 So. 2d at 889. Accordingly, the court concluded "there is a potential for coverage, [and] the duty to defend was triggered." *Id.*

The operative complaint here resembles the complaint in *MAC II*, but the complaints are not identical. Unlike in *MAC II*, the body of the Atalanta complaint does not make any specific allegations concerning RES's use of subcontractors. However, two exhibits incorporated into and attached to the Atalanta complaint do. First, the agreement between RES and FS3 for the construction of the refrigeration system contemplates the use of subcontractors by RES. *See* ECF No. 71-3 at 8 (requiring subcontractors to maintain insurance coverage); *id.* at 9–10 (sample subcontractor waiver and releases to be used during the project); *id.* at 17, 20, 24, 30–31 (making repeated references to subcontractors in the agreement between the parties). Second, the notice of claim letter from Atalanta to RES also contemplates the use of subcontractors. *See* ECF No. 71-6 at 3 (stating "Atalanta expects that RES will, within ten (10) days after receipt of this Notice of Claim, forward a copy of this Notice to each subcontractor . . . whom RES reasonably believes may be responsible for the defects specified in the attached reports"). Thus, while the operative complaint here is not perfectly analogous to *MAC II*, the Court finds that the allegations in the Atalanta complaint—combined with the multiple references to subcontractors in the complaint's exhibits as well as the requirement to resolve ambiguities in favor of the insured—establish potential for coverage similar to that found to trigger a duty to defend in *MAC II*.[9]

---

[9] Moreover, this analysis is strengthened by the emails that Maxum attempts to bring before the Court, which state that RES employed two subcontractors in the completion of this project. *See* ECF No. 38-9 at 5. For the reasons stated below, the Court finds these emails should not be considered at this stage, but if they were considered, they would appear to support RES's argument that the underlying complaint sufficiently alleges covered property

Accordingly, the Court finds the that the underlying complaint fairly and potentially encompasses damage to non-defective parts of the refrigeration system that would be covered under the holding in *Carithers*.[10]

## II. Maxum fails to meet its burden to show the exclusions bar coverage.

Having found that the allegations in the underlying complaint fairly and potentially include covered property damage, the Court next considers whether any of the policy's exclusions bar coverage. As previously noted, Maxum bears the burden to show the allegations of the underlying complaint "are cast solely and entirely within the policy exclusion[s] and are subject to no other reasonable interpretation." *Gotham*, 272 So. 3d at 527 (quotation and citation omitted). Any doubts are resolved in RES's favor. *See Jones*, 908 So. 2d at 442. The Court considers the "your work" exclusion, the independent contractor exclusion, and the breach of contract in turn, and for the reasons stated below finds that Maxum has not met its burden to show these exceptions bar coverage here.

### a. The "your work" exclusion does not bar coverage.

The Court begins with the "your work" exclusion. As noted above, this exclusion states that the policy does not apply to "'[p]roperty damage' to 'your work' arising out of it or any part of it[.]" ECF No. 1-3 at 26. The "your work" exclusion "does not apply if the damaged work or the work out of which the damage arises was performed on [the insured's] behalf by a subcontractor." *Id.*[11]

The Florida Supreme Court has held that the phrase "arising out of" in similar insurance policies is unambiguous and should be read broadly. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 539 (Fla. 2005) (analyzing the phrase in a similar insurance

---

damage in the form of damage to non-defective parts of the refrigeration system.

[10] The Court further notes that even if damage to non-defective parts of the refrigeration system were not "property damage" within the meaning of the policy, because the Atalanta suit sufficiently alleges damage to other personal property as well as damage to the warehouse unit, the underlying complaint sufficiently triggers coverage under the policy regardless. And facts alleged that are partially within coverage are sufficient to trigger the duty to defend. *See Gotham*, 272 So. 3d at 527.

[11] The policy defines "your work" to mean "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." ECF No. 1-3 at 37. The parties do not dispute the definition of "your work."

policy, albeit in the context of a different exclusion); *see also Richard Mckenzie & Sons*, 10 F.4th at 1263 (interpreting Florida law). The phrase "means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" *Id.* (citation omitted). It "requires some causal connection or relationship . . . [b]ut it does not require proximate cause." *Taurus Holdings*, 913 So. 2d at 539–40 (citation omitted).

Here, the underlying complaint states the property damage arose as "a direct and proximate cause" of RES's violations of Florida building codes, ECF No. 58-1 at 17, and as "a direct and proximate cause" of RES's negligence, *id.* at 19. However, the complaint also states that property damage also arose a "a direct and proximate cause" of the faulty design of the refrigeration system by the project's architects. *See id.* at 11, 12; *see also* ECF No. 77 at 1–2 (arguing the allegations support an inference that the damage may have arisen from the design work performed by RES's codefendants).

RES contends that *J.B.D. Const., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x 918 (11th Cir. 2014) supports a narrow reading of the "your work" exclusion. ECF No. 61 at 10–11; ECF No. 77 at 2. According to RES, the exclusion only applies to damage to RES's work, and when the "'property damage' alleged by the claimant is limited to the insured's work." *See* ECF No. 77 at 2 (citing *J.B.D.*). The Court agrees. In analyzing the "your work" exclusion vis-à-vis the duty to defend, *J.B.D.* did not specifically address whether the damage to other property alleged in the underlying complaint arose from the contractor's work. *See* 571 F. App'x at 926. However, the opinion suggests the language of the underlying complaint allowed for several possibilities concerning whether the damage to other property arose from the contractor's deficient work, or "from manufacturing defects or design flaws." *Id.* at 929. Based on this ambiguity, the Court held that the "your work" exception did not apply to the language of the underlying complaint, and held there was a duty to defend. *Id.* at 926.[12]

So too here, the Court finds Maxum has not met its burden to show the allegations in the underlying complaint are cast solely and entirely within the "your work" policy

---

[12] By contrast, the *J.B.D.* court held that there was no duty to indemnify based on the "your work" exception. The court noted that the duty to indemnify is narrower than the duty to defend and must be determined by analyzing the policy coverage in light of the actual facts in the underlying case. 571 F. App'x at 927.

exclusion. One reasonable interpretation of the complaint is that at least some of the property damage in the underlying suit arose from the architects' poor design of the refrigeration system, and not from RES's the poor construction of the system. Accordingly, the Court finds that the damages alleged in the complaint need not have arisen solely out of RES's work, and the "your work" exclusion does not bar coverage.[13]

The parties also briefed the interpretation of the "products-completed operations hazard" ("PCOH") that is part of the "your work" exclusion. DE 76-79. The "your work" exclusion bars coverage for "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" DE 1-3 at 26. PCOH includes property damage "occurring away from premises you own or rent and arising out of 'your product' or 'your work' except . . . Work that has not yet been completed or abandoned." DE 1-3 at 36. "'[Y]our work' will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

ECF 1-3 at 36. Maxum argues in its supplemental briefing that the exclusion applies because any damage arises from RES' work and such damage occurred after RES completed work on the project. DE 76 at 3-6. RES argues that the allegations in the underlying complaint indicate that damage likely occurred or began to occur before RES

---

[13] Even if the "your work" exclusion applied, the Court finds that the underlying complaint fairly and potentially alleges that at least some property damage resulted from the work of RES's subcontractors. As noted above, the underlying complaint contemplates that RES would use one or more subcontractors to perform its work. *See supra*, Discussion, Part II.b.iii. Accordingly, because one reasonable interpretation of the complaint is that at least some of the property damage alleged resulted from the work of one or more of RES's subcontractors, the Court finds that Maxum has not met its burden to show the allegations in the complaint are cast solely and exclusively within the "your work" exclusion. *See also* ECF No. 77 at 4–5 (arguing the references to subcontractors in the exhibits to the complaint should be read in RES's favor).

finished its work, and that the relevant time is when the damage actually occurs. DE 77 at 4; DE 79 at 2.

In analyzing when damage occurs for purposes of PCOH, courts focus on "when the damage happens, not when the damage is discovered or discoverable." *Auto-Owners Ins. Co. v. Env't House Wrap, Inc.*, No. 3:17-cv-817, 2019 WL 3069080, at *7-8 (M.D. Fla. July 12, 2019) (completed operations exclusion did not bar coverage when complaint alleged homeowners became aware of defects and deficiencies after construction was completed); *MAC Contractors*, 768 F. App'x at 973 (allegations "can be fairly construed to allege damages during ongoing operations" when complaint was silent as to timing of damages); *Carithers*, 782 F.3d at 1247.

### b. The independent contractor exclusion does not bar coverage.

As noted above, the policy states Maxum "shall have no obligation to indemnify or defend any insured for . . . 'property damage' . . . arising out of:

A. The premises of any independent contractor; or

B. The operations of any independent contractor for or on behalf of any insured.

C. "Your work" performed by independent contractors and included in the "products-completed operations hazard".

ECF No. 1-3 at 64. Maxum here attempts to introduce evidence that at least two subcontractors participated in the construction of the unit and argues that these subcontractors were "independent contractors" within the meaning of the independent contractor exclusion. ECF No. 36 at 15–16; *see also* ECF No. 40-9 at 5 (copies of emails from RES stating at least two subcontractors participated in the work for the refrigeration system). Maxum concedes that the policy distinguishes between "independent contractors" and "subcontractors." ECF No. 60 at 10–11. However, Maxum argues that "an entity could qualify as both an independent contractor and a subcontractor." *Id.* at 11 (emphasis omitted). RES objects to the use of these emails as extrinsic evidence not properly before the Court. ECF No. 66 at 6–7. Moreover, RES argues that even if these emails were considered, nothing in the emails or the underlying complaint in this action mandates that the term "independent contractor" necessarily include "subcontractors." *Id.* at 8–9.

The Court finds that Maxum has not met its burden to show that the facts alleged in

the underlying complaint are cast solely and entirely within the independent contractor exclusion for at least two reasons. First, even if the Court considered Maxum's emails,[14] nothing in those emails (or the underlying complaint and the attached exhibits) states that *all* work on the project was performed by subcontractors. At most, the emails and the complaint suggest that at least two subcontractors were involved in the project and performed some of the work on the refrigeration system. *See* ECF No. 40-9 at 5 (stating RES hired two subcontractors); *supra* Discussion, Part I.b.iii (finding the complaint and exhibits suggest at least some of the work was performed by subcontractors). One reasonable interpretation of the complaint is that RES performed some of the work on the project, and hired subcontractors to perform certain tasks on the project as well.

Second, even if the Court assumed subcontractors performed all of the work on the project, Maxum has not met its burden to show that the subcontractors RES hired were necessarily independent contractors within the meaning of the policy. It is undisputed that the policy refers to both independent contractors and subcontractors as separate categories. ECF No. 1-3 (policy exclusion referring to "[a]ny contractor, subcontractor or independent contractor contracted with you, any insured, or others on yours or any insured's behalf"). While the two categories may overlap, Maxum presents no evidence or binding authority for the proposition that the subcontractors here are necessarily "independent contractors" within the meaning of the policy here.[15] Accordingly, the Court finds the independent contractor exclusion does not bar coverage here.

---

[14] It does not appear that the emails meet the extrinsic facts exception in *Higgins*, 894 So. 2d at 10 n.2. However, as the Court notes above, on the face of the complaint, it does appear that subcontractors completed at least some of the work on the project.

[15] Maxum relies mainly on the unpublished decision in *Century Sur. Co. v. Franchise Contractors*, LLC, No. 14-CIV-277, 2016 WL 1030134 (S.D.N.Y. Mar. 10, 2016). There, applying New York state law, the district court concluded that "case law in the construction context demonstrates that general contractors and subcontractors in a construction project *usually* act as independent contractors." *Id.* at *8 (emphasis added). *Franchise Contractors* does not apply Florida law and does not bind the Court. Furthermore, the Court finds that inferring that all subcontractors are usually independent contractors, on the limited record available to the Court in a duty to defend, case would be contrary to the Florida Supreme Court's admonition to resolve "[a]ny doubts regarding the duty to defend . . . in favor of the insured." *Jones*, 908 So. 2d at 442.

###### c.  The breach of contract exclusion does not bar coverage.

Finally, the Court considers whether Maxum has met its burden to show the breach of contract exclusion bars coverage. The exclusion here applies to "'property damage' . . . directly or indirectly arising out of, caused by, or resulting from breach of contract." ECF No. 1-3 at 75.

Maxum argues that the exclusion applies here because all the claims that Atalanta brings in the underlying proceedings stem from a breach of contract—that is, RES's failure "to build the [refrigeration system] according to the specifications set forth in the Contract [between FS3 and RES]." ECF No. 36 at 11–15. Maxum points out that RES actually makes this same argument in the underlying case. *Id.* at 15. In its briefs, Maxum relies mainly on *HC Waterford Properties, LLC v. Mt. Hawley Ins. Co.*, No. 08-22158-CIV, 2009 WL 2600431 (S.D. Fla. Aug. 21, 2009), *report and recommendation adopted*, No. 08-22158-CIV, 2010 WL 49159 (S.D. Fla. Jan. 7, 2010). There, the court found that a breach of contract exclusion similar to the one at issue here applied. The underlying action in *HC Waterford* concerned a dispute between Waterford, a Florida company that owned a condominium building, and a purchaser of one of the condominium units. *Id.* at *1. When a water leak in a neighboring unit caused damage to purchaser's unit, the purchaser sued Waterford for negligence and failure to disclose. *Id.* Waterford sought coverage from its insurer Mt. Hawley, and after Mt. Hawley failed to defend the state court suit, sued Mt. Hawley. *Id.* In evaluating whether Mt. Hawley had a duty to defend Waterford, the district court found that because all claims arose from the sale contract of the condominium unit, the breach of contract exclusion barred recovery. *Id.* at *5.

RES disagrees and argues that the Court should interpret the claims in the Atalanta suit as they are alleged in the underlying complaint—not as Maxum argues they should be read. ECF No. 61 at 11–12. In addition to breach of contract, the underlying complaint here alleges negligence, professional negligence, and building code violation claims. *Id.* at 11. Thus, RES argues that the Court should not reduce all claims to the breach of contract claim. *Id.* RES adds that if Maxum intended the exclusion to bar coverage in such situations, it should have drafted the exclusion to say so. *Id.* Moreover, RES asks the Court to following the reasoning in *Cincinnati Specialty Underwriters Ins. Co. v. KNS Grp., LLC*, 561

F. Supp. 3d 1298 (S.D. Fla. 2021), *aff'd*, No. 21-13628, 2022 WL 5238711 (11th Cir. Oct. 6, 2022). There, the court considered a similar breach of contract exclusion in a duty to defend case. The court in *Cincinnati Specialty* specifically declined to follow *HC Waterford*. *See* 561 F. Supp. 3d at 1312 (finding that *HC Waterford* was not binding authority, and that it was "inapposite to Florida law interpreting insurance policies").[16] Instead, relying on Florida law, the *Cincinnati Specialty* court reasoned that the allegations in the underlying complaint controlled the duty to defend analysis. *Id.* at 1312–13. The court noted that because the underlying complaint raised claims other than a breach of contract claim, the parties would still have to litigate those non-breach of contract claims in state court in the underlying proceedings. *Id.* Accordingly, that would trigger a duty to defend. *Id.* And because an insurer has a duty to defend the entirety of the suit when claims fall both within and outside coverage, the *Cincinnati Specialty* court found that the insurer had a duty to defend the entire underlying suit. *Id.* at 1313. The Eleventh Circuit affirmed and reiterated that the insurer "has a duty to defend this whole suit if *any* claims fall within its scope of coverage" and concluded that the breach-of-contract exclusion did not apply. 2022 WL 5238711, at *5. The court further explained that "if any of [the insured's] claims against [the insurer] could have been brought in the absence of a contract between the parties, that claim would not fall within the breach-of-contract exclusion." *Id.*

The Court agrees with RES and the analysis in *Cincinnati Specialty*. Florida courts have made clear that the duty to defend "must be determined from the allegations in the complaint . . . and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless." *Jones*, 908 So. 2d at 443. Even if the state court in the Atalanta suit finds that the claims against RES for negligence, professional negligence, and building code violations are meritless, RES will have to defend against those claims in state court proceedings. Those non-breach of contract claims trigger a duty to defend. And because coverage of some claims triggers a duty to defend the entire suit, *see Gotham*, 272

---

[16] Moreover, as RES points out, the observations in *HC Waterford* about the breach of contract exclusion are dicta. The *HC Waterford* court decided that case on a separate exclusion for converted buildings. The court there then made subsequent observations about the breach of contract exclusion "assuming, *arguendo*" that the converted buildings exclusion did not apply. *HC Waterford*, 2009 WL 2600431 at *5.

23

So. 3d at 527, Maxum must defend RES here. Accordingly, the Court finds Maxum has not met its duty to show that the claims in the underlying complaint fall solely and exclusively within the breach of contract exclusion.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS AND ADJUDGES** as follows:

1. Plaintiff's motion for summary judgment, ECF No. 43, is **GRANTED IN PART**. Defendant's motion for summary judgment, ECF No. 36, is **DENIED**.

2. The Court finds Maxum has a duty to defend RES in the underlying lawsuit.

3. The Court finds that whether Maxum has a duty to indemnify RES is premature at this stage. Accordingly, the Court will **DISMISS without prejudice** any claims concerning the duty to indemnify. [17]

4. The Clerk shall administratively **CLOSE** this case.

5. Within 7 days of this order, RES shall file with the Court a proposed final judgment.

**DONE and ORDERED** in Chambers at West Palm Beach, Florida, this 10th day of January, 2023.

ROBIN L. ROSENBERG

---

[17] The parties agree that a determination concerning the duty to indemnify is premature. *See* ECF No. 13 at 13 (Maxum's motion to dismiss, arguing that this claim should be dismissed); ECF No. 20 at 14 (RES's opposition to the motion to dismiss, arguing the complaint only raises a duty to defend, and arguing that to the extent the complaint seeks a determination on indemnification, that claim should be stayed). To the extent RES seeks declaratory judgment on the duty to indemnify, the Court finds such a determination is not ripe until litigation has concluded in the state court action. *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019) ("We agree with these cases and the district court's conclusion that [the insurer's] duty to indemnify [the insured] is not ripe for adjudication until the underlying lawsuit is resolved.") Accordingly, the Court sees no bar to dismissing that claim—to the extent it is raised in the complaint— without prejudice. *See N. Am. Auto. Servs., Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, No. 21-80559-CIV, 2021 WL 4991324, at *1 (S.D. Fla. June 21, 2021) (finding dismissal without prejudice of an unripe duty to indemnify claim appropriate).

UNITED STATES DISTRICT JUDGE
for Marcia G. Cooke, United States District Judge

Copies furnished to:
*Melissa Damian, U.S. Magistrate Judge*
*Counsel of record*